57 CCPA

**Application of Joseph A. BRINK, Jr.
Patent Appeal No. 8239.**

United States Court of Customs
and Patent Appeals.
Jan. 15, 1970.

Richard W. Sternberg, Roger R. Jones, St. Louis, Mo., attys. of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and RAO, Chief Judge, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 1, 2, 4, 5 and 6, all the claims remaining in appellant's application entitled "Liquid Mist Collection." [1]

The invention relates to a method for separating a liquid mist from a mist-laden gas by passing the gas through a bed of glass fibers under such conditions that the liquid mist in the gas is collected on the glass fibers and is drained therefrom by gravity flow as a continuous liquid phase in substantially undiluted form. Particular use is found in the removal and recovery of acid mists from process gas streams. Appellant tells us that the success of the invention rests upon the discovery that it is not necessary to "sieve" the mist particles from the gas and that a bed formed of coarse fibers can be employed to remove even the smallest mist droplets if the fibers in the bed are compacted to a relatively high density.

Claim 1 is representative:

1. A process for separating and collecting a finely divided mist from a gas in which said mist is dispersed, which process comprises passing said gas through a bed of unbonded glass fibers having fiber diameters between about 5 and about 30 microns, said fiber bed being compressed to a bulk density of between about 5 and about 20 pounds per cubic foot, and concurrently draining liquid resulting from the collection of said mist from said bed by gravity flow in substantially undiluted form and as a continuous liquid phase to thereby effect steady state operation.

Claim 2 depends from claim 1 and limits the direction of gas flow. Claims 4–6 each depend from claim 2 and further restrict the range of fiber diameter and bed density.

The examiner rejected claims 1, 2 and 4 as being fully anticipated under 35 U.S.C. § 102 and claims 5 and 6 as being unpatentable under 35 U.S.C. § 103. The references he relied upon are:

Hennig       2,771,153       November 20, 1956

Lange's Handbook of Chemistry (Lange), 9th Ed.,

McGraw-Hill Book Co., New York, 1956, pp. 878–879.

[1]. Serial No. 280.847 filed May 16, 1963, alleged to be a continuation of serial No. 779,535 filed December 11, 1958.

Hennig discloses removing sulfuric acid mist from a gas stream laden therewith. He specifically illustrates an apparatus including a circular casing inside of which are disposed a plurality of vertical annular filters. One such filter is composed of two blankets of glass wool retained between inner and outer screens, the upper ends of the blankets being compressed and clamped against the exterior of an annular sleeve telescoped within the end of the screens. For the inner of the two blankets is used "a 14 micron average fiber diameter glass mat (commercially available as Owens-Corning TWF) of about 4 to 6 inches thick * * *."

Lange discloses properties of materials of construction and describes, inter alia, material No. 75 "Fiberglas TW–F, general purpose" of commercial construction "Batt, roll, bulk, shredded" and material No. 77 "Fiberglas, TW–F (see above)," commercial construction "Pipe covering blankets." For No. 75 a density of 2–10 lbs. per cu. ft. is given, while No. 77 is listed as having a density of 7 lbs. per cu. ft.

The board's affirmance reveals the Patent Office position:

Claims 1, 2 and 4 were rejected as being fully anticipated by Hennig, and claims 5 and 6 were rejected as being unpatentable over Hennig under 35 U.S.C. 103. The rejection of claims 1, 2 and 4 is put on the basis of 35 U.S.C. 102 because the Lange's Handbook, like a dictionary, is relied on to explain what is meant in the Hennig patent by the expression "14 micron average fiber diameter glass mat (commercially available as Owens-Corning TWF) of about 4 to 6 inches thick" * * *. Appellant has not suggested that 35 U.S.C. 103 would be a better basis for rejection by the rule-of-thumb that recourse to two references indicates a rejection under subordinate section 103 instead of section 102.

* * * * * *

Since the authoritative Lange's Handbook gives a density of 7 lbs. per cu. ft. for "Fiberglas TWF" blanket which Hennig recommended for his filter in a 14 micron average diameter form, it would seem that appellant's contentions or representations to the contrary should be explicit and to the point. * * * Appellant has instead resorted to a series of affidavit representations which in the aggregate give us little confidence in appellant's position.

* * * * * *

Only Exhibit C refers to "TWF" insulation and this is of a specialized type for appliance purposes and of an undisclosed fiber diameter. The "nominal" density for this fiber (2.6 lbs. per cu. ft.) is not explained, but obviously this is not the delivered, or use density since the material is packed under compression.

Appellant requested reconsideration and submitted a letter signed by "a vice-president of Owens-Corning Fiberglas Corporation" discussing the density of the product sold under the mark "TWF." The writer states:

I do not believe we ever had available or sold an insulating material under the mark "TWF" which had a bulk density much over 3 pounds per cubic foot and certainly not as high as 5 pounds per cubic foot in the normal uncompressed condition.

In adhering to its decision, the board stated that it was moved by the letter to consult available handbooks to determine whether the Lange data were unreasonable. The board then referred to an article by two Corning Glass Co. experts indicating that fibrous glass wool products have minimum densities between 4 and 6 lbs. per cu. ft. as well as a handbook indicating a density of 4 and 10 lbs. per cu. ft. for a Pyrex glass wool, curled. The board acknowledged that these sources provided no direct evidence as to the appeal issues, but felt that they

suggested that Lange was not out of line with ordinary experience.

Appellant acknowledges that except for the bulk density limitation Hennig satisfies every limitation of claim 1. He contends, however, that the rejection under 35 U.S.C. § 102 is a technical rejection based on alleged inherency. The process of the appealed claims, it is argued, is not inherent in the Hennig disclosure because nowhere therein is the importance of bed density recognized. Moreover, appellant urges, even if Lange may be properly referred to it is merely speculative that anything therein described is the same material used in the reference patent. As to "inherency" as a basis for rejection, appellant requests that we follow the language of this court in In re Hughes, 345 F.2d 184, 52 CCPA 1355 (1965), stating in effect that if a reference is ambiguous and can be interpreted so that it may or may not constitute an anticipation of an appellant's claims, an anticipation rejection under 35 U.S.C. § 102 based upon the ambiguous reference is improper. Here, it is contended, there is uncertainty or doubt as to the inherency.

The solicitor counters by arguing that In re Hughes is inapposite because there is nothing ambiguous about Hennig's disclosure. Rather, it is urged, there is merely an example of incorporation by reference in a patent disclosure, a frequent occurrence. In such a case, an outside source must be consulted in order to fully comprehend the invention in question.

The essence of the solicitor's argument appears in his brief as follows:

> Hennig specifies that blanket or mat 41 is commercially available as "Owens Corning TWF". This naturally leads one who wishes to practice Hennig's invention, to the literature on the subject. Aside from Lange, the only other evidence of record which refers to "TWF" insulation, is presented by Exhibit C * * * which accompanies the affidavit of November 12, 1965 * * *. While the TWF insulation

of that exhibit has a light coating of lubricant * * * and is available in the form of a blanket, the Board noted that it was of a specialized type and of an undisclosed fiber diameter * * *. Regarding its unexplained "nominal" density of 2.6 lbs. per cu. ft., the Board stated: "obviously this is not the delivered, or use density since the material is packed under compression" * * *.

The Board might further have noted that the density value of 2.6 in Exhibit C * * * is predicated upon a specific type of blanket no more than 3½″ in thickness, whereas Hennig's blanket 41 must be 4–6″ thick. In view of the difference in thickness and different purposes for which TWF blankets are used: (a) filtering (Hennig), (b) appliance insulation (Exhibit C) and (c) pipe covering (Lange's item 77, * * *), it is more likely that one would naturally select the Hennig blanket, item 77, since the upper limit of 3½″ for the blanket of Exhibit C would suggest its unavailability in the greater thicknesses specified by Hennig.

It is immaterial that Hennig does not mention pipe covering or refer to "general purpose TWF" (as contended * * *). This appeal must be decided on the totality of evidence before the Court plus whatever common knowledge the Court is aware of, of which it will take judicial notice.

The solicitor then states that "[s]ince Hennig does refer to 'Owens Corning TWF' * * *, the important question to decide is which form of TWF constituting part of the evidence of record, one skilled in the art would select for blanket 41 in putting into practice the Hennig invention."

Accepting the solicitor's statement of the question above, without necessarily totally agreeing therewith, we conclude from a careful consideration of the evidence of record that one is unable to say with reasonable certainty that one form of TWF would be used in preference to

another. Hennig discloses only TWF, in addition to setting forth a blanket thickness. Yet *Lange* lists two types of TWF with no mention of thickness. One type has a density of 2–10 lbs. per cu. ft. and is available in batt, roll, bulk or shredded form, while the other of 7 lbs. per cu. ft. density is available as pipe covering blankets. Neither would appear to be preferred over the other for the filtering use of Hennig. Just as the ambiguous reference failed as an anticipation under 35 U.S.C. § 102 in In re Hughes, supra, we do not see how a disclosure or combination of disclosures leaving one to rely on fortune in choosing the referred to material can function as an anticipation. Absent a showing of some reasonable certainty of inherency, the rejection of claims 1, 2 and 4 under 35 U.S.C. § 102 must fail. With respect to claims 5 and 6, we agree with the solicitor that since the rejection of those claims is predicated on the assumption that Hennig's blanket has a bulk density of 7 lbs. per cu. ft., reversal of that rejection is in order once having reversed the rejection of claims 1, 2 and 4, predicated on the same assumption.

The decision of the board is, therefore, reversed.

Reversed.