60 CCPA

**Application of Husni R. ALUL and Gilbert J. McEwan.**

**Patent Appeal No. 8763.**

United States Court of Customs and Patent Appeals.

Nov. 16, 1972.

Thomas N. Wallin, Chesterfield, Mo., attorney of record, for appellant; Roger R. Jones, Ballwin, Mo., Herbert B. Roberts, Chesterfield, Mo., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the rejection of claims 1–10 of appellants' application.[1]

## THE INVENTION

The invention concerns the alkylation of a monocyclic aromatic hydrocarbon or a monocyclic phenol with a straight chain olefin in the presence of a hydrogen fluoride catalyst. The reaction as previously used had apparently resulted in products containing a relatively large amount of isomers in which the aromatic group was attached centrally with respect to the alkyl chain, and a relatively small amount of isomers in which the aromatic group had been attached near the end of the alkyl chain. Appellants point out that in the manufacture of alkylaryl sulfonate surface active agents having certain properties such as maxi-

---

1. Application Serial No. 553,030, filed May 26, 1966.

mum solubility, it is advantageous to utilize a relatively high percentage of arylalkane isomers in which the aromatic substituent is attached to the second or third carbon from the end of the alkyl chain. According to appellants' application:

It has now been found in accordance with this invention that * * * the proportions of isomers in which the aromatic nucleus is near one end of the alkyl chain can be materially increased under almost all otherwise standard conditions of alkylation by using conditions such that one does not obtain a separate catalyst phase. Normally, in using an HF catalyst, process conditions and an amount of catalyst are employed such that a separate catalyst phase is obtained, and the use of a relatively large excess of the HF catalyst has been conventionally considered to be advantageous. However, hydrogen fluoride is soluble to a limited extent in a mixture of aromatic hydrocarbons and alkenes or a mixture of a phenol and alkenes, and in accordance with this invention it has been found that a satisfactory alkylation reaction can be achieved using an amount of HF equal to or below that amount which is soluble at the particular reaction conditions being employed in the particular mixture of raw materials being utilized in the alkylation reaction.

The application gives two alternative methods for determining the amount of HF to be employed:

The maximum amount of catalyst which can be satisfactorily employed in accordance with this invention can be determined by a solubility test of HF in the aromatic raw material at the temperature to be employed, but an even better method has been discovered for determining the approximate maximum amount of HF which can be employed in most instances. In accordance with this preferred method, in excess of HF is added to a quantity of the aromatic reactant to be employed and the mixture is heated or cooled as needed in a closed vessel to the temperature at which it is desired to conduct the alkylation reaction. The equilibrium pressure generated at this temperature is characteristic of the particular mixture and, if the temperature is below the boiling point of the aromatic reactant, will remain substantially the same as long as any undissolved HF is present. If, therefore, one vents HF from the vessel until a substantial pressure drop is obtained, one is certain that there is no longer any separate HF phase in the mixture. * * *

Claim 1 reads as follows:

1. In a process for the manufacture of aromatic substituted alkanes wherein an aromatic compound is reacted with a normal alkene of from about 8 to 24 carbon atoms in the presence of hydrogen fluoride catalyst, said aromatic compound being selected from the group consisting of monocyclic aromatics having not more than 15 carbon atoms and in which the aromatic nucleus has not more than three substituents, the substituents in each instance being selected from the group consisting of hydroxy and alkyl groups, the improvement which comprises increasing the proportion of the product wherein the aromatic substituent occupies the 2 or 3 position on the alkyl chain by conducting the reaction at a temperature from the freezing point of the reaction mixture to 200°C in the presence of an amount of catalyst correlated with the temperature to provide a mixture in which there is no separate liquid catalyst phase until at least about 25% of the alkene in the reaction mixture has been consumed by chemical reaction.

Claim 2 sets the initial reaction temperature at from about 10°C. to 80°C. Claim 3 depends from claim 2 and recites that the reaction is conducted at a pressure of from about 0 to 100 pounds

per square inch gauge. Claims 4–6 and 10 depend from claim 3. Claim 4 limits the amount of catalyst present to from about 2% to 6% of the total reaction mixture weight. Claim 5 recites that the temperature is maintained within the range of from about 10°C. to 80°C. and the pressure is retained within the range of from about 0 to 100 p. s. i. g. until the reaction is essentially completed. Claim 6 recites that the alkene reactant has a molecular chain length of from 10 to 20 carbon atoms. Claims 7–9 depend from claim 6. Claim 7 recites that the alkene reactant is composed predominantly of alpha-olefins. According to claim 8 the aromatic compound is benzene; claim 9 specifies phenol. Claim 10 reads as follows:

> 10. A process in accordance with Claim 3 wherein a mixture is formed of at least a portion of said aromatic compound and excess HF catalyst, the resulting mixture brought while confined to an initially selected temperature within the range of about 10°C to 80°C, the pressure on said mixture reduced to below the equilbrium [sic] pressure of a mixture of said aromatic compound and liquid HF, and said alkene and remaining aromatic compound, if any, is then added while retaining said reaction mixture at a temperature at least about as high as said initially selected temperature.

### THE PRIOR ART

Alul et al. [Alul][2] discloses the alkylation of aromatic compounds with high molecular weight straight chain monoolefins, using hydrogen fluoride as the catalyst. The patent is directed to the discovery that by running the reaction at higher-than-normal temperatures, preferably 35°C.–65°C., one could reduce the impurity content of a recycle stream not pertinent here, while maintaining yields as high as obtained at lower, conventional temperatures. Alul gives data

for alkylation reactions carried out at from 6°C.–60°C. and specifies the preferred chain length for the alkene from about 6 to about 20 carbon atoms. With regard to the other conditions, it is stated:

> In general, alkylation conditions, other than temperature, which are suitable for normal hydrogen fluoride catalyst alkylations are suitable for use in practicing the present invention. In most cases, the olefin to catalyst molar ratio ranges from about 1:5 to about 1:25 with about 1:15 to 1:20 being preferred and the benzene to olefin molar ratio preferably ranges from about 3:1 to 20:1, although benzene in excess of the 20:1 ratio may be used. * * *

> The alkylation reaction should be carried out at temperatures from about 35°C. to about 65°C. and preferably from about 50° to 55°C. Superatmospheric pressures sufficient to maintain the catalyst and reactants in the liquid phase are maintained during the alkylation reaction and such pressures are dependent upon reactants used and conditions maintained in the alkylation reaction and, in general, are usually no greater than about 100 atmospheres. * * *

The patent contains the following statement:

> After the alkylation reaction has been completed to the extent desired, the *catalyst phase* is usually separated and the reaction products and unreacted reactants are fractionally distilled in order to separate the desired alkylbenzene products from the undesired by-products and unreacted reactants such as paraffins and benzenes. [Emphasis added.] * * *

The above separation was carried out in the patent's sole example as follows:

> The reaction mixture was stirred at such temperature for an additional 20

2. U.S. Patent No. 3,349,144, issued October 24, 1967, to present appellants Alul and

McEwan and another, on an application filed September 25, 1964.

minutes, then allowed to settle. The catalyst phase separated as a lower layer from the alkylated liquor phase and was removed therefrom. * * *

### THE REJECTION

The examiner rejected claims 1–6, 8 and 9 on the basis of 35 U.S.C. § 102, as "fully met" by the Alul patent. The examiner stated:

In view of the Alul et al. disclosure of reacting the same reactants under the same reaction conditions as those recited in the instant claims it is obvious that the same results are produced, i. e., the aromatic substituent occupies the 2 or 3 position on the alkyl chain. * * *

Claims 7 and 10 were rejected under 35 U.S.C. § 103 as unpatentable over the Alul patent. In their brief, appellants concede that claim 7 can be treated together with claims 1–6, 8 and 9. The section 103 rejection of claim 10 was reversed by the board.

Apparently in response to the above rejections, appellants introduced an affidavit in order to establish that the Alul patent's sole example described a reaction which took place under conditions such that there had to be a separate catalyst phase present. The board agreed that there would have been a separate catalyst phase in the Alul example, but stated:

The Alul et al. disclosure is of course not limited to the specific example. The Examiner also refers to column 3, lines 55–60 where patentees disclose an olefin-catalyst molar ratio range of 1:5 to 1:25 and a benzene-olefin molar ratio range of 3:1 to 20:1, thus permitting a benzene-olefin-catalyst molar ratio of 20:1:5. Assuming an average mono-olefin chain length of 13 carbon atoms, this reaction mixture would contain five and a fraction per cent of HF, within the range set out in dependent claim 4. Thus claims 1 through 6, 8 and 9, if not fully met by Alul et al. under 35 U.S.C. § 102, define nothing unobvious over the reference under 35 U.S.C. § 103.

Appellants submitted a petition for reconsideration, together with the affidavit of one Dyroff. The Dyroff affidavit states that under the conditions disclosed in the Alul patent which would be most likely to result in the absence of a separate catalyst phase—a benzene to olefin to catalyst molar ratio of 20:1:5, the minimum amount of interfering substance disclosed, and a temperature of 65°C.—a separate catalyst phase was obtained. The board considered the affidavit and neither criticized nor refuted any of its allegations. However, the board considered that it failed to overcome the rejection:

Since the claims encompass operating conditions described in the reference, they fail to distinguish therefrom.

The examiner also rejected claims 1–3 and 5–10 under 35 U.S.C. § 112 as "indefinite in the use of functional language at the point of novelty." The board expanded this rejection to include claim 4 and stated:

This rejection appears to be grounded on the failure of the claims to set out the operating conditions necessary to provide a reaction mixture in which there is no separate liquid catalyst phase, and the consequent failure of the claims to define the asserted invention with the particularity required by 35 U.S.C. 112.

We will sustain this rejection. * * *

### OPINION

■ We are unable to sustain the rejections of the claims based on the Alul patent. The board's allegation that "the claims encompass operating conditions described in the reference" could only be upheld by ignoring the limitation in the claims that the amount of catalyst must be "correlated with the temperature to provide a mixture in which there is no separate liquid catalyst phase * * *." Appellants have demonstrated that under the conditions fairly disclosed

in the Alul patent a separate catalyst phase would inherently be present. Whether or not some of the claim limitations overlap some of the process conditions disclosed in the reference is not important. Appellants' invention is a process in which a number of reaction conditions must be met. For the reference to anticipate the invention, *all* of the claim limitations must be met.

The solicitor seizes upon the statement in Alul that "benzene in excess of the 20:1 ratio may be used." The solicitor argues that in view of that statement affiant Dyroff failed to select the ratio of reactants most likely to result in the absence of a separate catalyst phase and for that reason the affidavit is entitled to little weight. We note that the board made no such criticism of the affidavit. Indeed, it was the board who first brought up the benzene-olefin-catalyst ratio of 20:1:5 which was evaluated in the Dryoff affidavit. The solicitor is in effect arguing that at some benzene to olefin ratio greater than 20:1 there would be alkylation conditions in the process of Alul which would come within the limits of claims 1–9. We find that reasoning viewed in the light of the entire Alul disclosure, too speculative to support a rejection based on anticipation. *Cf.* In re Brink, 419 F.2d 914, 57 CCPA 861 (1970). We are of the opinion that appellants have established that all reaction mixtures reasonably disclosed by Alul have a separate liquid catalyst phase.

■ With regard to the rejection based on 35 U.S.C. § 103, appellants' case is even stronger. The process of Alul clearly resulted in a separate catalyst phase, yet nothing in Alul directs the reader away from such a separate phase or indicates that any problems at all might arise from it. Nor does Alul contain any disclosure which would lead one to minimize the catalyst concentration or otherwise change conditions such that no separate catalyst phase would be obtained. Appellants' allegation that an excess of catalyst was conventionally considered advantageous in this type of reaction finds support in the preferred catalyst ranges of Alul and has not been rebutted in the least by the Patent Office. While Alul says nothing about the product isomer distribution, we need not consider appellants' contentions that their invention achieves unobvious results in that regard, for the Patent Office has failed to establish a *prima facie* case of obviousness here.

■■ The rejection of all the claims under 35 U.S.C. § 112 is also untenable. We can assume *arguendo* that the board is correct in considering that the claims omit "at least one condition necessary to operation with no separate liquid catalyst phase."[3] Nevertheless, appellants' claims particularly point out and distinctly claim their *invention*, which is an alkylation process in which a separate phase is avoided. Their invention is *not* a method for avoiding a separate catalyst phase in a reaction mixture, and the claims are not directed to such a method. While it is true that one would not be able to use the *claimed* process without having some method of avoiding a separate catalyst phase, it cannot be questioned that such a method is fully disclosed in appellants' specification—in fact, two alternative methods are disclosed. The "how to use" requirement of the first paragraph of section 112 is satisfied. The fact that appellants' claims recite a condition without reciting each and every step necessary to obtain that condition does not render the claims indefinite. In re Rainer, 305 F.2d 505, 509, 49 CCPA 1243, 1248 (1962); *Cf.* In re Swinehart, 439 F.2d 210, 58 CCPA 1027 (1971).

---

3. Appellants point out and we agree that this criticism could not possibly apply to claim 10, for that claim recites a stepwise procedure which would inevitably result in the absence of a separate liquid catalyst phase. However, the view we take of the case renders it unnecessary to deal separately with the section 112 rejection of claim 10.

We note that a substantial part of the solicitor's brief is devoted to arguments which were not raised below and which are tantamount to new grounds of rejection. The practice of raising such matters at this stage of the prosecution is unfair to the other party, adds to the burden of the court, and serves to obscure the raising party's position on the issues that actually were raised below. We will not consider these new arguments. We realize the position this leaves appellants in, but we are confident that if any merit were found in the new arguments in cases like this, the Patent Office would reopen prosecution to assert them and give appellants a chance to respond to them.

The decision of the board is reversed.

Reversed.