**Application of Robert J. GYURIK and William D. Kingsbury.**

**Appeal No. 78–615.**

United States Court of Customs and Patent Appeals.

April 12, 1979.

Stuart R. Suter, Philadelphia, Pa., attorney of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE,* and MILLER, Judges.

MARKEY, Chief Judge.

Appeal from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the rejection under 35 U.S.C. § 103 of claims 1–5 and 15–16 of application serial No. 557,207, filed March 10, 1975, for "New Anthelmintic 5–Cycloalkylthio– and Oxy–2–Carbalkoxyaminobenzimidazole Compositions."[1] We reverse.

*The Invention*

The invention is directed to 5–cycloalkylthio– and oxy–benzimidazole compounds having general anthelmintic properties, *i. e.*, broad spectrum activity against parasitic worms of warm-blooded animals. The compounds are disclosed as having, in particular, "high activity against various helmintic infections of the intestinal tract of economically important animals, coupled with low systemic toxicity to the host animal." The claims at issue read:

1. A chemical compound of the structure:

* Judge Lane took no part in the decision in this matter.

1. A continuation-in-part of application serial No. 364,841, filed May 29, 1973.

$$R-(CH_2)_n-X \quad \text{[benzimidazole ring, positions 5,4,6,7 and N3, 2, N1 H]} \quad NHCO_2CH_3$$

in which R is cycloalkyl of 3–6 carbons, n is an integer of from 0–5 and X is oxy or thio, $R(CH_2)_n$ having 3–8 carbons.

2. A compound of claim 1 in which $R(CH_2)_n$ is cyclohexyl, cyclopentyl or cyclopropylmethyl.

3. A compound of claim 1 in which X is thio.

4. A compound of claim 1 in which R is cyclopentyl or cyclohexyl, n is 0 and X is thio.

5. A compound of claim 1 in which X is thio and n is 1.

15. A compound of claim 1 in which R is cyclohexyl, n is 0 and X is thio.

16. A compound of claim 1 in which R is cyclopentyl, n is 0 and X is thio.

### The Rejection

The references relied upon by the examiner were:

Beard et al. (Beard)[3]  3,929,821  December 30, 1975
Actor et al. (Actor)  3,574,845  April 13, 1971
Belgian patent  809,234  June 28, 1974

The Beard patent is generally directed to anthelmintic 5(6)–benzene ring substituted benzimidazole–2–carbamate derivatives and specifically names, as such anthelmintic derivatives, three sulfinyl compounds of interest here, i. e., 5(6)–cyclopropylmethyl–, 5(6)–cyclopentyl–, and 5(6)–cyclohexylsulfinyl–2–carbomethoxyaminobenzimidzole.[4] The Beard patent describes, in general,

methods for preparing the anthelmintic compounds:

In general, the compounds of the present invention can be prepared from benzene starting compounds having nitro and amino or acylamino (for example, acetamido) substituents at adjacent positions on the benzene nucleus (e. g., the 1– and 2–positions), and the desired R moiety (or a moiety which can be reacted to give the desired R moiety) at the 4– or 5–position of the benzene nucleus (i. e., at what will be the 5– or 6–position of the benzimidazole compound to be prepared). The nitro group is reduced to an amino group to afford a benzene derivative having amino groups at the 1– and 2–positions. The diamino compound is then reacted with a 1,3–bis (alkoxy–carbonyl)–S–alkyl–isothiourea to give the corresponding 5(6)–substituted benzimidazole 2–carbamate derivative.

The functional moiety at the 4– or 5–position of the benzene starting material can be, for example, the thiocyanate group which can be left unaltered at its position during formation of the remainder of the benzimidazole 2–carbamate, or it can be converted, by known reactions, to an alkylthio or arylthio group, which, in turn, can be converted, also by known reactions, to the alkyl– or aryl– sulfinyl or alkyl– or arylsulfonyl group.

A reaction sequence is disclosed as particularly adapted to produce certain of the desired products, including the particular sulfinyl derivatives pertinent in this case:

---

2. Conventional numbering of the positions of the peripheral atoms of the benzimidazole nucleus has been added to the structural formula of claim 1 for clarity in referring to those positions.

3. Filed November 21, 1973, as a continuation-in-part of application serial No. 319,299, filed December 29, 1972, now abandoned.

4. The Beard patent names seventeen compounds as "presently preferred since they have shown substantial activity against the helminths specifically referred to above," and presents a further list of 244 illustrative compounds. The three sulfinyl compounds of interest here appear in the latter list.

wherein Z may be $R^2SO$, $R^2$ being, inter alia, a cycloalkyl having 3 to 7 carbon atoms. Of the most significance here is reaction step (5) wherein a sulfinyl derivative may be prepared by oxidation of the corresponding thio intermediate.

The now-abandoned parent application of the Beard patent contains a disclosure similar though more limited than that of the Beard patent.[5] The above-noted reaction step depicting oxidation of the thio intermediates is not disclosed, but the general description of the methods of preparation, quoted above, is. The parent specifically names the 5(6)–cyclopentyl– and 5(6)–cyclohexylsulfinyl derivatives.

The Belgian patent reference contains essentially the same disclosure as the Beard patent.

Actor was cited only to show that one skilled in the art would have no problem preparing the claimed compounds. No sufficiency of enablement issue has been raised with respect to Beard or the Belgian patent, and the parties are thus in agreement that Actor adds nothing beyond the disclosure of the other references.

The examiner rejected claims 1–3 and 5 as obvious over the Belgian patent or the Belgian patent in view of Actor and all claims as obvious over Beard or Beard in view of Actor.[6]

5. Though the abandoned parent application was not in the certified record, the parties agree on its content.

6. Claimed compounds wherein n = 1, i. e., cycloalkyl–alkyl thio compounds, are not entitled to the filing date of the parent application, May 29, 1973. Therefure, claims 1–3 and 5 have a filing date of March 10, 1975, and were additionally rejected over the Belgian patent which has an effective date as a reference of June 28, 1974.

The rejection on the Belgian patent cited its specific naming of 5(6)–cyclopropylmethylsulfinyl – 2 – carbomethoxyaminobenzimidazole, considered with the generic disclosure that such sulfinyl compounds may be prepared by oxidation of the corresponding thio. The examiner said preparation of this specific sulfinyl compound via the corresponding thio intermediate would have made the thio compound obvious, even though the patent discloses other methods of preparing the sulfinyl compounds.

Respecting the rejection on Beard, the examiner limited consideration to disclosure appearing in Beard and in its parent application,[7] and cited the specific naming of 5(6)–cyclopentyl– and 5(6)–cyclohexylsulfinyl – 2 – carbomethoxyaminobenzimidazole, with the generic disclosure that such benzimidazoles may be prepared by reacting an appropriately 4(5)–substituted diaminobenzene with 1,3–bis (alkoxy–carbonyl)–5–alkyl–isothiourea to give the corresponding 5(6)–substituted benzimidazole–2–carbamate, the substituent being the moiety desired in the final product or a moiety which can be reacted to give the desired moiety. The examiner concluded that it would have been obvious that such a moiety could be a thio when the ultimately desired moiety is a sulfinyl, thus rendering obvious the thio compounds corresponding to the two specifically named sulfinyl compounds.

Speaking of the rejections in general terms, the examiner stated:

[I]t is submitted that with the specific naming of the corresponding sulfinyl compounds of the sulfide compounds at issue and an indication that the former may be made from the latter, enough of a teaching is present in the references to make the claimed compounds obvious. If

the naming of the sulfinyl compound is sufficient to support a rejection of the same sulfinyl compound under 35 U.S.C. 102 then the naming of the compound is likewise sufficient to support a rejection under 35 U.S.C. 103 for whatever would be obvious thereover regardless of how broad the disclosure is. The rejections are essentially premised upon the obviousness of the claimed compounds over specifically named compounds viewed with certain parts of the generic disclosure rather than solely upon generic teachings which, for a particular group of compounds, can be overcome by a showing of unexpected properties of this group over the other members of genus.

After filing an appeal to the board, appellants requested remand to the examiner to initiate an interference with U.S. Patent No. 4,046,908, issued to Haugwitz et al. (Haugwitz) on September 6, 1977. Remand was granted, but the examiner refused to set up an interference and maintained the rejections for the reasons previously provided in her answer before the board.

### The Board

The board adopted the examiner's position as its own [8] and further stated:

The references specifically disclose the cyclopropylmethyl, cyclopentyl and cyclohexyl sulfinyls. As pointed out by the Examiner the references indicate that the sulfinyl group is obtained through the oxidation of the corresponding thio group * * *. Beard et al * * * and the Belgium patent * * * further describe a means for obtaining cycloalkylthio derivatives. The foregoing is deemed sufficient to lead an organic chemist of ordinary skill directly to the

---

7. All claims were rejected on Beard. Claims 4, 15, and 16 find support in appellants' parent application, and thus have an effective filing date of May 29, 1973. The filing date for the Beard patent is November 21, 1973. Rejection of all claims, therefore, must rely on disclosure of the Beard patent appearing also in its parent, filed December 29, 1972.

8. The board noted that, although the examiner based her rejection over Beard on the disclosure in the abandoned parent application, the rejection of claims 1–3 and 5 could also find basis in the Beard patent.

specific production of the claimed cyclo- propylmethyl, cyclopentyl and cyclohexyl thio compounds. Accordingly, we find appellants' argument relating to the "huge family of benzimidazoles" disclosed in the references to be unconvincing, since the art of record in effect inherent- ly describes the specific benzimidazoles in issue.

Appellants contend that, in order to obtain the claimed compounds from the teaching of Beard et al, one must proceed from the end products back to possible starting materials through a choice of "a number of different routes of synthesis disclosed by Beard et al." As far as we can determine from our consideration of the reference, there is only one starting material and one process (or at most two) capable of producing the thio compound and from there, to the corresponding sul- finyl compound.

Regarding the issues raised by appel- lants relative to the refusal of the Exam- iner to set up an interference with the Haugwitz et al patent No. 4,046,908, this Board has no authority to "return the present application to the Examiner with instructions to set up" said interference. Moreover, the question of whether or not the art relied upon by the Examiner here- in (or equivalent thereof) was considered in the prosecution of the Haugwitz et al application is not necessarily material to the issues before this Board. Each case must be decided on its own merits, and on the evidence presented in this record, we are convinced that there is no reversible error in the Examiner's rejection of the

claims under the provisions of 35 USC 103, holding that the claims in issue would be rendered *prima facie* obvious over the teachings of the art.

### Issues

The issues are whether the inventions of claims 1–5 and 15–16 would have been pri- ma facie obvious from the Beard abandoned parent application and whether claims 1–3 and 5 would have been prima facie obvious from the Belgian patent.[9]

### OPINION

■ It is helpful to determine what the rejections are not. First, though the board's statement that "the art of record in effect inherently describes the specific ben- zimidazoles in issue" might upon first blush indicate a rejection for lack of novelty based on inherency, the totality of the ex- aminer's rejection and the board's opinion clearly indicates the absence of an inheren- cy rejection from this case. The board's statement appears nowhere else in the board's opinion and nowhere in the examin- er's answer. Section 102 was never cited, and the board's ultimate conclusion was that "there was no reversible error in the examiner's rejection of the claims under the provisions of 35 USC 103, holding that the claims in issue would be rendered *prima facie* obvious over [*sic,* by] the teachings of the art." Moreover, at oral argument the solicitor asserted that the rejection is purely one for prima facie obviousness and that no inherency rejection is involved.[10]

9. Due to overlapping of the rejections, not sep- arately argued by appellants, it is only neces- sary to determine whether the three thio com- pounds, 5(6)–cyclopropylmethyl–, 5(6)–cyclo- pentyl–, and 5(6)–cyclohexylthio–2– carbomethoxyaminobenzimidazole, would have been obvious from the Beard patent. *See* notes

5–7 *supra.* Each of these compounds is encom- passed by claims 1–3, and at least one is en- compassed by each of the remaining claims 4–5 and 15–16. The legal analyses respecting each compound relative to the Beard patent disclo- sure are essentially identical.

10. The generic formula, $R^2S$— —$C$—$NCOOR$ , representing the class of intermediates

in Beard's reaction step (5), even when further limited to those intermediates that correspond to all the final benzimidazole products specifically named in Beard, would not embrace a very limited number of compounds closely related to one another in structure so as to describe each such compound as surely as if they were identified in the reference by name, as

Second, and notwithstanding the solicitor's contrary insistence, the rejections here are not based on a close relationship in chemical structure between the claimed thio compounds and the sulfinyl compounds specifically named in Beard. Neither the examiner nor the board took the position that the claimed thio compounds would have been obvious from Beard's sulfinyl compounds per se, because of a chemical analog relationship or otherwise.[11] Hence, obviousness based on structural similarity per se is a new issue not appropriate for consideration on this appeal. *In re Armbruster,* 512 F.2d 676, 678 n.2, 185 USPQ 152, 154 n.2 (Cust. & Pat.App.1975); *In re Alul,* 468 F.2d 939, 944, 175 USPQ 700, 704 (Cust. & Pat. App.1972).

The only basis stated by either the examiner or the board for the present obviousness rejection is that the claimed thio compounds would have been prima facie obvious because the references generally disclose thio compounds as intermediates for the preparation of a group of compounds that includes specifically named sulfinyl compounds corresponding to three of the claimed thio compounds. Thus, the present obviousness rejection is based solely upon the "status" of the claimed compounds as intermediates in the production of end products specifically named in the prior art.

Few cases have raised the significance of compounds as intermediates in a 35 U.S.C. § 103 context. *Commissioner of Patents v. Deutsche Gold-und-Silber-Scheideanstalt Vormals Roessler,* 130 U.S.App.D.C. 95, 110–11, 397 F.2d 656, 671–72, 157 USPQ 549, 562–63 (1968); *In re Widmer,* 353 F.2d 752, 759–60, 53 CCPA 762, 770–71, 147 USPQ 518, 524–25 (1965); *In re Druey,* 319 F.2d 237, 240–41, 50 CCPA 1538, 1542, 138 USPQ 39, 41 (1963); *In re Surrey,* 319 F.2d 233, 235–36, 50 CCPA 1336, 1339, 138 USPQ 67, 69 (1963), *cert. denied,* 375 U.S. 930, 84 S.Ct. 332, 11 L.Ed.2d 264, 139 USPQ 566 (1963); *In re Finley,* 174 F.2d 130, 134–35, 36 CCPA 998, 1004–05, 81 USPQ 383, 387 (1949). In each of these cases, prima facie obviousness had been established by the PTO along traditional lines of structural relationship, and the question respecting intermediates was whether sufficient evidence had been offered to rebut the prima facie case when the compounds tested were end products and the compounds claimed

was the situation surrounding the § 102 rejections in *In re Schaumann,* 572 F.2d 312, 197 USPQ 5 (CCPA 1978), and *In re Petering,* 301 F.2d 676, 49 CCPA 993, 133 USPQ 275 (1962).

11. The pertinent sulfinyl compounds of Beard differ in chemical structure from the corresponding three thio compounds embraced by appellants' claims only in the substitution of a sulfur

and an oxygen atom $\left(\begin{array}{c} - \ S \ - \\ || \\ O \end{array}\right)$ for the sulfur atom (– S –) at the 5(6) position of the

benzimidazole nucleus of the thio compounds. This relationship in chemical structure being neither homologous nor isomeric, the claimed thio compounds are best described as chemical analogs of Beard's corresponding sulfinyl compounds. We express no view on whether Beard or any other prior art of record would have suggested to those skilled in the art a similarity in anthelmintic properties between the claimed thio compounds and Beard's analogous sulfinyl compounds, thus motivating those so skilled to produce the claimed compounds. *See In re Albrecht,* 579 F.2d 92, 94, 198 USPQ 208, 209 (Cust. & Pat.App.1978); *In re Kuderna,* 426 F.2d 385, 389, 57 CCPA 1078, 1084, 165 USPQ 575, 579 (1970); *In re Wagner,* 371 F.2d 877, 883–84, 54 CCPA 1031, 1039, 152 USPQ 552, 559 (1967); *In re Wetterau,* 356 F.2d 556, 560, 53 CCPA 916, 921, 148 USPQ 499, 503 (1966); *In re Rosselet,* 347 F.2d 847, 851, 52 CCPA 1533, 1538, 146 USPQ 183, 186 (1965); *In re Carabateas,* 345 F.2d 1013, 1016, 52 CCPA 1386, 1390–91, 145 USPQ 549, 552 (1965), *modified,* 357 F.2d 998, 53 CCPA 1065, 149 USPQ 44 (1966); *cf. In re Stemniski,* 444 F.2d 581, 585, 58 CCPA 1410, 1416, 170 USPQ 343, 347 (1971).

were intermediates.[12] These cases are, therefore, of little aid in deciding the present issue, i. e., whether the PTO has established prima facie obviousness by reference to a generic disclosure of thio compounds as intermediates for the preparation of certain sulfinyl compounds.

■ A fundamental principle applicable in assessing the obviousness of chemical compounds is that a compound and its properties are, in patent law, inseparable. In re Papesch, 315 F.2d 381, 391, 50 CCPA 1084, 1097, 137 USPQ 43, 51 (1963); accord, Commissioner of Patents v. Deutsche Gold-und-Silber-Scheideanstalt Vormals Roessler, supra, 130 U.S.App.D.C. at 101, 397 F.2d at 662, 157 USPQ at 554. The present record, however, is devoid of reference by the PTO to the expected properties of the claimed compounds.[13]

■ An element in determining obviousness of a new chemical compound is the motivation of one having ordinary skill in the art to make it. That motivation is not abstract, but practical, and is always related to the properties or uses one skilled in the art would expect the compound to have, if made. In re Stemniski, supra note 10, 444 F.2d at 585–86, 58 CCPA at 1416–17, 170 USPQ at 347 (1971). The present obviousness rejection cannot stand without some basis in the expected properties of the claimed compounds.

■ In obviousness rejections based on close similarity in chemical structure, the necessary motivation to make a claimed compound, and thus the prima facie case of obviousness, rises from the expectation that compounds similar in structure will have similar properties. See In re May, 574 F.2d 1082, 1094, 197 USPQ 601, 611 (Cust. & Pat.App.1978); In re Wilder, 563 F.2d 457, 460, 195 USPQ 426, 429 (Cust. & Pat.App. 1977); In re Hoch, 428 F.2d 1341, 1344, 57 CCPA 1292, 1296, 166 USPQ 406, 409 (1970). No common-properties presumption rises from the mere occurrence of a claimed compound at an intermediate point in a conventional reaction yielding a specifically named prior art compound. That an intermediate/end-product relationship exists between a claimed compound and a prior art compound does not alone create a common-properties presumption. Absent that presumption or other evidence of motivation, it cannot be said that it would have been obvious to stop the process for synthesizing the disclosed end product and isolate the claimed intermediate.[14]

### Conclusion

The examiner and the board having failed to properly establish that the claimed compounds would have been prima facie obvious from the prior art of record, the board decision affirming the rejection of claims 1–5 and 15–16 is reversed.[15]

REVERSED.

12. On this basic question the Court of Appeals for the District of Columbia Circuit stated:

[T]he best evidence rule has a sound basis for application in the patent field. But, the rule is not "hard and fast," Application of Widmer, supra note 41, 353 F.2d at 759 [147 USPQ at 524–525]. Secondary evidence runs a greater risk of failing the relevancy test of admissibility in proportion to its remoteness from the claimed subject matter, but the question of remoteness is a question of law to be determined on the basis of the subject matter as a whole.

Commissioner of Patents v. Deutsche Gold-und-Silber-Scheideanstalt Vormals Roessler, supra 130 U.S.App.D.C. at 111, 397 F.2d at 672, 157 USPQ at 563.

13. The examiner withdrew an obviousness rejection when appellants presented comparative data evincing greater anthelmintic activity for the claimed cycloalkyl compounds relative to certain cited open-chain compounds. There was no similar analysis by the examiner of expected anthelmintic properties relative to the sulfinyl compounds of the rejection at issue here.

14. The mere ability of a compound to act as an intermediate toward the production of other compounds does not alone constitute the sort of "property" that the cases on obviousness of chemical compounds contemplated.

15. That the Haugwitz patent has issued claiming some of appellants' claimed compounds is irrelevant to our decision. Each case is determined on its own merits. In reviewing specific rejections of specific claims, this court does not consider allowed claims in other applications or

BALDWIN, Judge, concurring.

Although I agree with the discussion in the majority opinion as well as the resulting decision, it seems necessary to emphasize what the opinion does *not* say.

The majority opinion wisely does *not* ossify the area of chemical compound obviousness into a single requirement that the prior art compound and the claimed compound have "common properties." Indeed, the precursor-product rationale applied by the examiner and the board in this case would be exemplary of the actions taken by one having ordinary skill in the art if some additional practical reasons were provided for recovering the claimed precursor. *See In re Stemniski*, 444 F.2d 581, 58 CCPA 1410, 170 USPQ 343 (1971). For instance, it is my understanding that certain compounds having utility as explosives or rocket fuels are only prepared immediately prior to use from specific, and chemically stable, precursors. The fact that the precursor compounds do not have the common explosive property is the very reason that the stable precursor would have been obvious from the product.

In the instant case, no practical reason is found in Beard et al. for chemically pausing in the reaction sequence and recovering the precursor alkyl-thio compounds nor is there any indication that those compounds were, in fact, isolated and used as starting materials.

Accordingly, the decision of the board is properly reversed.

patents. *In re Atwood*, 267 F.2d 954, 956, 46 CCPA 901, 904, 122 USPQ 378, 380 (1959); *In re Freedlander*, 136 F.2d 759, 760, 30 CCPA 1179, 1181, 58 USPQ 402, 403 (1943).