**Application of Robert G. TABORSKY.**

**Patent Appeal No. 9183.**

United States Court of Customs
and Patent Appeals.

Aug. 29, 1974.

Arthur L. Cain, Cain & Lobo, Cleveland, Ohio, atty. of record for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents;

Henry W. Tarring II, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

LANE, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to after reconsideration, which affirmed (with one examiner-in-chief dissenting) the rejection under 35 U.S.C. § 103 of claims 1 through 8 in appellant's patent application serial No. 730,596, filed May 20, 1968,[1] for "3-Nitrohalosalicylanilides." We reverse.

### Claimed Subject Matter

3-Nitrohalosalicylanilides have the following general structural formula (numerals indicate ring positions):

$$NO_2 \quad OH \qquad halogen(s)$$

In the above structural formula, the left-hand aromatic ring is called the "salicyl" ring and the right-hand aromatic ring is called the "aniline" ring.

Claim 1 is a generic claim to 3-nitrohalosalicylanilides:

    1. A 3-nitrohalosalicylanilide having the formula

$$NO_2 \quad OH \qquad Y_n$$

where Y is a halogen and n is a positive integer no greater than 5.[2]

1. This application is a continuation-in-part of application serial No. 469,300, filed July 2, 1965, which in turn was a continuation-in-part of application serial No. 325,473, filed November 21, 1963, and application serial No. 435,686, filed February 26, 1965, which were both filed as continuations-in-part of application serial No. 56,679, filed September 19, 1960.

2. The structural formulas in appellant's claims depict the compounds as containing six-membered *aliphatic* rings. However, it is clear from the chemical name 3-nitrohalosalicylanilide that appellant intends to claim compounds which contain six-membered *aromatic* rings. The examiner has advised appellant that he will be required to indicate that the rings in the structural formulas are aromatic.

Claim 2 is an independent subgeneric claim reciting the structural formula shown in claim 1 where Y is a halogen and n is a positive integer no greater than 3.

Claims 3–8 are dependent on claim 2, and they recite individual chemical species where the identity or the position of the halogen substituent varies as follows:

Claim 3:

Claim 4:

Claim 5:

Claim 6:

Claim 7:

Claim 8:

The remaining claim, independent claim 9, stands allowed:

9. A 3-nitrohalosalicylanilide having the formula

Appellant's specification states that 3-nitrohalosalicylanilides are useful, inter alia, as piscicidal agents for selectively eradicating brown bullhead fish and as selective larvicides for controlling sea lamprey, the latter having caused great damage to commercial fish, such as trout, in the Great Lakes. Data in the specification indicate that several of appellant's claimed compounds possess a significantly greater lethal effect to sea lamprey larvae than to fingerling rainbow trout.

*References*

The examiner and the board relied on four prior art references:

(1) Schraufstatter and Gonnert [Schraufstatter], U.S. Patent 3,079,297, granted February 26, 1963 (filed May 31, 1960; claims benefit of earlier applications)

(2) Strufe, Schraufstatter, and Gonnert [Strufe], U.S. Patent 3,113,067, granted December 3, 1963 (filed August 23, 1960)

(3) Ioffe et al. [Ioffe I], Zhurnal Obshchei Khimii, 29:2682–2685 (August 1959)

(4) Ioffe et al. [Ioffe II], Chem. Abstracts, 54:10938 (1960)

The examiner cited another reference, not as prior art, but for the purpose of establishing "certain statements of fact" (relying on In re Wilson, 311 F.2d 266, 50 CCPA 773 (1962)):

Howell et al. [Howell], U.S. Patent 3,238,098, granted March 1, 1966 (application filed January 27, 1964)[3]

3. The Howell patent (assigned to the United States of America as represented by the Secretary of the Interior) was involved in an interference with Taborsky's application

Appellant cited two references:

Starkey, U.S. Patent 3,309,267, granted March 14, 1967

Taborsky, U.S. Patent 3,527,865, granted September 8, 1970 [4]

### Rejection

The examiner rejected claims 1–8 under 35 U.S.C. § 103 as "obvious over" Schraufstatter, Strufe, and the two Ioffe references. The board majority sustained this rejection and stated: "We agree with the examiner that the claimed compounds are *structurally obvious* and that the evidence offered by appellant to show that the compounds have unexpected beneficial properties *fails of its objectives*." (Emphasis ours.) The dissenting examiner-in-chief would have reversed the rejection because " * * * the art of record fails to establish that the invention, as a whole, would have been obvious to a person having ordinary skill in the art. In re Papesch, 50 CCPA 1084, 315 F.2d 381, 137 USPQ 43 (1963)."

### Schraufstatter

The Schraufstatter patent, the first prior art reference, is entitled "Method of Combating Gastropods," and it discloses that certain derivatives of 2-hydroxy-benzoic-anilide are effective gastropodicidal agents. Schraufstatter broadly defines a genus of 2-hydroxy-benzoic-anilide derivatives having the following structural formula:

wherein R is hydrogen or a lower alkanoyl radical having from 1 to 4 carbon atoms and which is substituted at one of the numbered positions with a

halogen atom and at another numbered position with a member selected from the group consisting of halogen and the nitro group; and further members of *the said first mentioned group* substituted at a total of up to three additional of the numbered positions with members selected from the group consisting of halogen, methyl and trifluoro methyl, the total number of halogen substituents, however, not exceeding four and the total number of nitro groups not exceeding two.

Here and in the following, chlorine, bromine and iodine are to be understood by "halogen." [Emphasis ours.] This definition of the genus is unclear since the phrase "the said first mentioned group" is ambiguous. Nevertheless, the genus appears to include compounds where R is hydrogen, a halogen "is substituted at one of the numbered positions," and a nitro ($-NO_2$) group is substituted "at another numbered position." Thus, the defined genus encompasses a large number of compounds, including some of appellant's claimed compounds.

Schraufstatter then defines a subgenus of "particularly active gastropodicidal agents in accordance with the invention" which has the following formula:

wherein R is hydrogen or a lower alkanoyl radical having from 1 to 4 carbon atoms, $R_1$ is hydrogen or methyl, $R_2$ is chlorine or bromine, $R_3$ and $R_4$ are hydrogen, methyl, chlorine or bromine, or a nitro group, $R_4$ [sic] and $R_6$ are hydrogen, chlorine or bromine and wherein always only one

---

serial No. 539,723, filed April 4, 1966, as a division of application serial No. 469,300, see note 1, supra. Taborsky was the successful party. See Howell v. Taborsky, 164 USPA 58 (Bd.Pat.Intf.1969).

4. This patent was granted on application serial No. 539,723, see note 3 supra.

nitro group and at most three halogen substituents are present.

This subgenus does not encompass appellant's claimed compounds since, by definition, only R₃ and R₄ may be nitro groups and the structural formula shows that R₃ and R₄ are always on the *aniline* ring (the right-hand ring). Appellant's claimed compounds always have the nitro group at the 3 position on the *salicyl* ring (left-hand ring).

Schraufstatter then gives "[b]y way of example" a list of the chemical names and the melting points of twenty specific derivatives of 2-hydroxy-benzoic-anilide said to be "notably useful and more or less readily producible compounds." Inspection of this list reveals that three of the twenty compounds do not contain a nitro group. The other seventeen compounds each contain at least one nitro group (one compound contains two nitro groups). Sixteen of these seventeen compounds have the nitro group(s) located on the *aniline* ring *as required by the sub-genus*, above. One of these seventeen compounds has the nitro group on the *salicyl* ring (the left-hand ring), and that compound is disclosed as follows:

\*  \*  \*  \*  \*      \*  \*  \*  \*  \*

Melting Point, °C

\*  \*  \*

5-nitro-4'-chlorosalicylanilide          252

\*  \*  \*

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*

---

To illustrate, the named prior art compound has the following structural formula:

[prior art]

This compound departs from the definition of the sub-genus since it has the nitro group on the *salicyl* ring (the left-hand ring) whereas the sub-genus requires that the nitro group be located on the *aniline* ring.

What remains in Schraufstatter— working examples of how to synthesize eight specific compounds, a table showing minimum concentrations needed to produce a 100% death rate in snails after 24 hours using specific compounds, and a working example of how to prepare compositions consisting of the active ingredient plus a carrier (e. g.—an emulsifier)—is concerned only with compounds which come within the defined sub-genus.

The prior art compound, 5-nitro-4'-chlorosalicylanilide, differs structurally from the compound recited in appellant's claim 5 in the position of the nitro group on the salicyl ring. The claim 5 compound has the nitro group at the 3 position of the salicyl ring while the prior art compound has the nitro group at the 5 position of the salicyl ring. Another way of expressing this structural difference is to say that in the claim 5 compound the nitro group is in an adjacent position relative to the hydroxy (–OH) group on the salicyl ring whereas in the prior art compound the nitro group is in the opposite position relative to the hydroxy group on the salicyl ring. In short, the claim 5 compound is structurally a non-adjacent position isomer of the prior art compound.

### Strufe

The Strufe patent, the second prior art reference, is entitled "Alkanolamine Salts of Salicyl Anilides And Process For Their Production", and it discloses

that alkanolamine salts of salicyl anilides are useful for "combating snails and slugs." The Strufe patent is related to the Schraufstatter patent in that Schraufstatter and Gonnert, the two co-inventors shown in Schraufstatter, are also co-inventors in Strufe, and the two patents indicate a common assignee.

Strufe defines a genus of alkanolamine salts of salicyl anilides as follows:

\* \* \* \* \* \*

Generally the new compounds of this invention are alkanolamine salts of salicyl anilides of the general formula

$$\left[ R_4 \underset{R_4}{\overset{OR_1}{\bigcirc}} \!\!-CO-NH-\underset{R_4}{\overset{R_4}{\bigcirc}} \right] \!\! \begin{array}{c} -R_2 \\ -R_3 \end{array}$$

wherein $R_1$ denotes hydrogen or an aliphatic acyl radical, $R_2$ and $R_3$ denote a nitro group, chlorine or bromine whereby at least $R_2$ of $R_3$ means a halogen atom, $R_4$ denotes hydrogen or alkyl or alkoxy groups with 1–5 carbon atoms or nitro groups whereby at least one of $R_4$ denotes a nitro group.

Strufe teaches that:

The production of the aforesaid alkanolamine salts is carried out according to known methods by reacting the salicyl anilides with alkanolamines such as a mono-ethanolamine, N-methylethanol-amine or 1, 2-dimethyl-ethanolamine and the like.

Strufe expressly refers to Schraufstatter when stating that:

The free salicyl anilides and their gastropod combating properties are the subject matter of \* \* \* [identifying by serial number the great-grandparent application, the grandparent application, the parent application, and the application which has] issued to Patent 3,079,297 [the Schraufstatter patent].

Strufe points out a practical disadvantage when using the compounds broadly disclosed by Schraufstatter:

As it is stated above it is known to use substituted 2-hydroxybenzanilides and their O-acyl compounds as gastropod combating agents; however, these compounds are barely water-soluble and have therefore several disadvantages in practice.

Strufe states that it is known to use substituted 2-hydroxybenzanilides in the form of their alkali metal salts, but that the majority of these compounds have the "disadvantage of being rapidly re-precipitated" in water containing mineral salts, and therefore they are "not very suitable for combating snails living in water."

Having thus described a practical problem confronting those skilled in the art, Strufe indicates that he has solved the problem by producing and using alkanolamine salts of salicylanilides " \* \* \* which are not precipitated in an aqueous mineral-salt-containing solution [and] which are stable even without addition of emulsifiers \* \* \*."

Strufe then gives working examples of how to prepare nine specific alkanolamine salts of salicylanilides. The salicylanilide starting compound in each example is either a 2'-nitrosalicylanilide or a 4'-nitrosalicylanilide, viz., where the nitro group is substituted on the aniline ring.

Following the working examples is a list of fourteen "[o]ther salicylanilides which can be reacted with suitable alkanolamines to give useful compounds \* \* \*." Among the fourteen compounds is: "5-nitro-4'-chlorosalicyl-anilide (M.P. 252°)."

As in Schraufstatter, this is the sole compound specifically disclosed in the list or in the entire reference where the nitro group is on the salicyl ring, and the chemical name and melting point are the sole disclosures relevant to the compound.

### Ioffe I and II

The third and fourth prior art references are Ioffe I and Ioffe II, respectively. Ioffe I is a technical paper enti-

tled "N-Substituted Amides of Salicylic Acid and Its Derivatives. I. Arylides, of 3, 5-Dichlorosalicylic and 5-Nitrosalicyclic Acids.", translated from a Russian chemical journal. Ioffe II is cumulative to Ioffe I since Ioffe II is the abstract of Ioffe I published in *Chemical Abstracts*.

Ioffe I is mainly concerned with methods of chemical synthesis, and the authors conclude that the best method of preparing arylides of salicylic acid is by "the direct alloying of salol [phenyl salicylate] with amines." They state that the derivatives produced by their "salol method" are "more pure" than the same derivatives when prepared by reacting a substituted-salicylic acid with a substituted-amine in the presence of phosphorus trichloride. Ioffe I presents tables showing twelve specific derivatives of 3, 5-dichlorosalicylic acid and the corresponding twelve specific derivatives of 5-nitrosalicylic acid. Among the twelve derivatives of 5-nitrosalicylic acid is the following compound:

| Anilide Grouping | | | | | Color | | Melting Temp. | | * | * | * |
|---|---|---|---|---|---|---|---|---|---|---|---|
| * | * | * | * | * | * | | * | * | * | * | * |
| 4'-Chloranilide | | | | | Cream | | 255–257 | | * | * | * |
| * | * | * | * | * | * | | * | * | * | * | * |

Hence, Ioffe I discloses the same compound, 5-nitro-4'-chlorosalicylanilide, shown by Schraufstatter and Strufe. The examiner recognized that Ioffe I was cumulative to Schraufstatter and Strufe, and stated that Ioffe I "was cited because of its date." Ioffe I does not disclose any biological utility for this compound or for any derivative of 5-nitrosalicylic acid. Ioffe I only states that: "In reduction, the arylides of the 5-nitrosalicylic acid are transformed into corresponding arylides of the 5-aminosalicylic acid, which are diazotized and form azo dyes together with azocomponents."

## OPINION

The general issue is whether the cited prior art establishes that "* * * the *differences* between the subject matter sought to be patented and the prior art are such that the subject matter *as a whole* would have been obvious *at the time the invention was made* to a person having ordinary skill in the art * * *." 35 U.S.C. § 103 (emphasis ours). The specific issues are whether appellant's claimed chemical compounds are prima facie obvious because of structural similarity to the cited prior art and, if so, whether there is a sufficient showing to rebut prima facie obviousness.

### Fluoro-Substituted Compounds

With respect to the compounds recited in claims 1 and 2 when Y is fluorine and with respect to the compound 3-nitro-4'-fluorosalicylanilide recited in claim 6, we hold that the cited prior art fails to establish prima facie obviousness. To arrive at these fluoro-substituted compounds, one must modify the closest prior art compound, 5-nitro-4'-chlorosalicylanilide, in two essential ways, first by changing the position of the nitro group from the 5 position to the 3 position, and second, by changing the identity of the halo-substituent from chloro to fluoro.

■ In determining the propriety of the Patent Office case for prima facie obviousness, it is necessary to ascertain whether the prior art teachings would appear to be sufficient to one of ordinary skill in the art to suggest making the proposed substitution or other modification. In re Lintner, 458 F.2d 1013, 1016, 59 CCPA 1004, 1007 (1972).

Schraufstatter expressly limits the scope of "halogen" in the definition of his genus to "chlorine, bromine, and iodine." Thus, appellant's fluoro-substituted compounds are outside Schraufstatter's genus as well as Schraufstatter's sub-genus. Strufe's reference to "[t]he free salicyl anilides" of Schraufstatter similarly limits the disclosure of Strufe to "chlorine, bromine, and iodine." Furthermore, Strufe as a whole is directed to preparing alkanolamine salts of salicylanilides because, as he states it, free salicylanilides have "several disadvantages in practice." Ioffe I does not mention or suggest the desirability of any fluoro-substituted compounds. In short, the prior art of record provides one of ordinary skill in the art with no motivation to make the proposed molecular modifications needed to arrive at appellant's claimed fluoro-substituted compounds. See In re Murch, 464 F.2d 1051, 59 CCPA 1277 (1972) and In re Fay, 347 F.2d 597, 52 CCPA 1483 (1965). The questions posed by this court in In re Stemniski, 444 F.2d 581, 586, 58 CCPA 1410, 1416 (1971), are also relevant here:

> * * * what on this record—other than abstract, theoretical or academic considerations—would lead one of ordinary skill to change the structure of the reference compounds to obtain the claimed compounds? Certainly no practical considerations which promote the progress of useful arts or are of use to society are manifest. How can there be obviousness of structure, or particularly of the subject matter as a whole, when no apparent purpose or result is to be achieved, no reason or motivation to be satisfied, upon modifying the reference compounds' structure? * * *

Since we hold that the prior art of record fails to establish that the fluoro-substituted compounds recited in appellant's claims are prima facie obvious, it is unnecessary to consider any comparative evidence with respect to the properties of these compounds.

### Chloro-, Bromo-, and Iodo-Substituted Compounds

With respect to the compounds recited in claims 1 and 2 when Y is chlorine, bromine, or iodine and with respect to the specific compounds recited in claims 3, 4, 5, 7 and 8, we hold that objective comparative evidence of record establishes the non-obviousness of these compounds. In re Papesch, 315 F.2d 381, 50 CCPA 1084 (1963); In re Wiechert, 370 F.2d 927, 54 CCPA 957 (1967); Commissioner of Patents v. Deutsche Gold-Und-Silber-Scheideanstalt Vormals Roessler, 130 U.S.App.D.C. 95, 397 F.2d 656 (1968); National Distillers & Chemical Corp. v. Commissioner of Patents, 233 F.Supp. 917 (D.D.C.1964).

Since comparative evidence demonstrates that these compounds possess biological activities which are beyond what could reasonably be predicted by the person of ordinary skill in the art, it is unnecessary for us to specificially pass on the issue of whether these compounds are prima facie obvious since, even if they are, the prima facie case has been overcome by the evidence. In re Blondel, 499 F.2d 1311 (CCPA 1974).

We begin our review of the comparative evidence of record with the claimed compound 3-nitro-4'-chlorosalicylanilide (claim 5), which is a non-adjacent position isomer of the prior art compound 5-nitro-4'-chlorosalicylanilide disclosed by Schraufstatter, Strufe and Ioffe I. The Howell patent, which was cited by the examiner (although not a prior art reference) and by appellant (to show unexpected properties), indicates in Table V that the claimed compound produces 100% mortality in sea lamprey larvae at a low concentration of 0.3 parts per million of water. Comparative data for the prior art compound 5-nitro-4'-chlorosalicylanilide is found in Howell's Table IV where it is indicated that a higher concentration of 0.5 parts per million is necessary to produce 100% mortality in sea lamprey larvae.

Such an objective difference in the desired toxicity of the claimed compound

is unexpected in view of the seemingly minor difference in molecular structure, and that difference in toxicity is an empirical fact which could not be reasonably predicted by one of ordinary skill in the art. Hence, the difference in toxicity is persuasive evidence that the claimed compound has non-obvious properties. Since a compound and its properties are inseparable in patent law, In re Papesch, supra, "* * * the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would [not] have been obvious at the time the invention was made to a person having ordinary skill in the art * * *." 35 U.S.C. § 103.

Similarly, Howell teaches that 3-nitro-4'-bromosalicylanilide (claim 8) produces 100% mortality in sea lamprey larvae at a concentration of 0.3 parts per million while the corresponding compound 5-nitro-4'-bromosalicylanilide (not specifically disclosed in the prior art) requires a higher concentration of 0.5 parts per million to produce 100% mortality. Appellant's specification states that 3-nitro-4'-iodosalicylanilide (claim 7) produces 100% mortality in sea lamprey larvae at a concentration of 0.3 parts per million while Howell states that the corresponding compound 5-nitro-4'-iodosalicylanilide (not specifically disclosed in the prior art) requires a higher concentration of 0.5 parts per million to produce 100% mortality.

Furthermore, Howell states that 3-nitro-3'-chlorosalicylanilide (claim 4) produces 100% mortality in sea lamprey larvae at a concentration of 0.3 parts per million while the corresponding compound 5-nitro-3'-chlorosalicylanilide (not specifically disclosed in the prior art) requires the higher concentration of 15.0 parts per million to produce 100% mortality.

We conclude that the objective evidence, comparing representative claimed compounds with the corresponding 5-nitro compounds, is sufficient to establish differences which demonstrate the non-obviousness of all of appellant's claimed chloro-, bromo-, and iodo-substituted compounds.

The decision of the board is reversed.

Reversed.