873 F.2d 1451
 11 U.S.P.Q.2d 1315
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re George LEVITT.
 No. 88-1626.
 United States Court of Appeals, Federal Circuit.
 April 7, 1989.
 
 Before FRIEDMAN, MAYER and MICHEL, Circuit Judges.
 FRIEDMAN, Circuit Judge.
 
 DECISION
 
 1
 The decision of the Patent and Trademark Office Board of Appeals and Interferences (Board), sustaining the examiner's rejection of claims 2, 6 through 17, and 71 of patent application Ser. No. 209,307, entitled "Agricultural Sulfonamides," as unpatentable under 35 U.S.C. Sec. 103 (1982), is reversed.
 
 OPINION
 
 2
 * The claimed invention concerns a class of chemical compounds useful as herbicides and plant growth modifiers. The claims at issue are directed to compounds with a molecular framework that is comprised of three elements, only one of which is here pertinent: a substituted phenyl ring.
 
 
 3
 A phenyl ring is a particular type of chemical entity which has six carbon atoms that are linked together in a special way to form a hexagonally shaped ring. Each carbon atom has four potential bonding sites, three of which are taken up by the ring itself. There is, therefore, a single bonding site remaining on each of the carbon atoms.
 
 
 4
 In the claimed compounds, the rest of the molecular framework is attached to the first carbon atom in the ring. The second or "ortho" carbon is bonded to an ester substituent. An ester is a derivatized acid group. This ester group is therefore said to be "ortho" to the rest of the molecular framework. In addition, one of the four remaining carbon atoms in the ring is bonded to a nitrogen-containing group. This nitrogen-containing group is said to be "floating" in that it may be bonded to any one of the four remaining carbon atoms.
 
 
 5
 The examiner rejected the claims on appeal as obvious under 35 U.S.C. Sec. 103, and the Board affirmed. The examiner and the Board relied upon the appellant's own prior art, Belgian Patent No. 853,374 (Belgian patent), in light of Harrington, et al., United States Patent No. 3,639,474 (Harrington).
 
 
 6
 The Belgian patent describes compounds of the same basic molecular framework, useful as herbicides or plant growth modifiers, which differ in several respects from those now claimed by the appellant. The compounds of the Belgian patent lack the appellant's ortho ester and "floating" nitrogen-containing group described above. Instead, the Belgian compounds either have no substituent (other than hydrogen) on the phenyl ring, or the phenyl ring has a variety of substituents other than those set forth in the appellant's application.
 
 
 7
 The Harrington reference describes significantly different compounds useful as herbicides and plant growth modifiers. Both reference compounds and the compounds on appeal share the substituted phenyl ring. In Harrington, the substituents are selected from a group of 37 possibilities. These include the ortho ester and the nitrogen-containing group.
 
 The Board stated:
 
 8
 We agree with the examiner that it would have been prima facie obvious to one ordinarily skilled in the art to select as substituents for the phenyl ring of the compounds of the Belgian patent those substituents which were known in the prior art to be suitable substituents for the phenyl ring of other aromatic compounds useful as herbicides and plant growth modifiers, as illustrated by Harrington, with the reasonable expectation that such substituted compounds would possess herbicidal and PGR properties similar to the compounds of the Belgian patent. We note in this respect that it is a clear inference from the teachings of the Belgian patent that the herbicidal and PGR activity of the reference compounds is not dependent on the particular nature of the substituents on the phenyl ring. That is, the compounds have similar properties whether the phenyl ring is unsubstituted or substituted by one or more of the various designated substituents.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 We are not persuaded of error in the rejection of claims 2, 6 through 17 and 71 by Appellant's arguments. We do not view the compounds of the Harrington reference as being so dissimilar from those of the Belgian patent that optional variants found to be suitable for the phenyl ring of one would not be expected to be suitable optional variants for the other. One ordinarily skilled in the herbicide art would be expected to be familiar with both types of herbicides. Further, the substituents on both the prior art and claimed compounds all appear on the phenyl ring portion common to both classes of compounds.
 
 II
 
 12
 At oral argument, the Commissioner stated that the Board's conclusion of obviousness depends upon the combined teachings of the Belgian patent and the Harrington references, and cannot be sustained upon either of the two references alone.
 
 
 13
 In the chemical arts, we have noted that "[t]he mere fact that it is possible to find two isolated disclosures which might be combined in such a way to produce a new compound does not necessarily render such production obvious unless the art also contains something to suggest the desirability of the proposed combination." In re Grabiak, 769 F.2d 729, 732, 226 USPQ 870, 872 (Fed.Cir.1985), quoting In re Bergel, 292 F.2d 955, 956-57, 130 USPQ 206, 208 (CCPA 1961) (emphasis in original). We can find no express or implied suggestion in the Harrington reference that the ortho ester and nitrogen-containing group would be a desirable substituent for herbicide compounds other than the specific class disclosed therein. Similarly, although the Belgian reference does teach the suitability of a variety of different substituents, it does not specifically suggest the ortho ester or the nitrogen-containing group of the present claimed invention.
 
 
 14
 The mere fact that both references originate from the herbicide art does not provide any teaching or suggestion to combine them. Nor does the fact that both references concern compounds containing a phenyl ring suggest that substituents suitable in one case would be expected to be suitable in the other. The Commissioner admitted at oral argument that phenyl rings are common to many herbicides. As such, the mere commonality of a phenyl ring in the two references provides an insufficient basis upon which to combine them.
 
 
 15
 The Board's determination that it would have been obvious to combine the two references cannot stand.
 
 
 16
 MAYER, Circuit Judge, dissenting.
 
 
 17
 The molecular framework of the compounds disclosed in the Belgian patent is identical to that of the compounds of Levitt's application. The Belgian patent teaches that this type of compound exhibits plant growth regulating and herbicidal activity. The structural similarity between Levitt's compounds and those claimed in the Belgian patent, alone, gives rise to a reasonable expectation that similar activity would be seen. See In re Merck & Co., Inc., 800 F.2d 1091, 1096, 231 USPQ 375, 379 (Fed.Cir.1986). To affirm an obviousness rejection, nothing more is required. See In re O'Farrell, 853 F.2d 894, 903, 7 USPQ2d 1673, 1681 (Fed.Cir.1988).
 
 
 18
 But the examiner went even further. To the extent Levitt's modifications may have imparted patentability to his claims, the examiner correctly said that Harrington discloses the identical substituents, and teaches that a phenyl moiety so substituted exhibits herbicidal activity. In any event, the Belgian patent shows that plant growth regulation is independent of the presence of substituents on the phenyl moiety. So "the prior art teachings [are] sufficient to one of ordinary skill in the art to suggest making the proposed substitution or other modification," and the "PTO [properly made its] case for prima facie obviousness." In re Taborsky, 502 F.2d 775, 780, 183 USPQ 50, 55 (CCPA 1974); see In re Payne, 606 F.2d 303, 314, 203 USPQ 245, 255 (CCPA 1979).
 
 
 19
 Levitt's reliance on In re Grabiak, 769 F.2d 729, 226 USPQ 870 (Fed.Cir.1985), to support the argument that his modification was not suggested by the prior art is misplaced. Unlike our situation, the prior art there disclosed "rings which are unlike any part of the [appellant's] molecule." Id. at 732, 226 USPQ at 872. Moreover, Grabiak read the prior art "as showing 'dramatic decreases' " in activity that would be occasioned by the substitution he made. Id. We recognized that our disposition might have been different if, as here, "the interchange [taught by the prior art] was in a [moiety] common to both the prior art compounds and the applicant's compounds." Id.
 
 
 20
 Having made a prima facie case, the PTO properly shifted the burden to Levitt to come forward with "evidence affirmatively supporting unobviousness." Id. at 731, 226 USPQ at 871. Levitt did submit declarations under Rule 132, but the Board held that he failed to rebut the prima facie case because the evidence was not commensurate in scope with his claims, and variations in activity of the magnitude he described were taught by the prior art. I see no error and would affirm.