5 F.3d 1505
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 In re Antonius J.J.M. VAN DER BOLT, Wilhelmus M.M. Van Der
Bolt and Martinus C.M. Verhoeven.
 No. 92-1517.
 United States Court of Appeals, Federal Circuit.
 Aug. 10, 1993.
 
 Before RICH, MICHEL, and SCHALL, Circuit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 Applicants appeal from the February 28, 1992 decision of the Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board), Appeal No. 91-0454, affirming the examiner's rejection of claims 1 and 3 in patent application Serial No. 310,493, filed February 14, 1989, which is a continuation of patent application serial number 125,916, filed November 27, 1987, entitled "Colour Display Tube Comprising Vibration Damping Means In A Supporting Frame To Which A Shadow Mask Is Connected," as unpatentable under 35 U.S.C. Sec. 103 in view of U.S. Patent No. 3,553,516 to Kautz or U.S. Patent No. 4,308,485 to Ignazio, in view of U.S. Patent No. 4,645,968 to Ragland. We reverse.
 
 DISCUSSION
 
 2
 Applicants' invention relates to a color display tube for a color television. Claims 1 and 3 of the application are reproduced below:
 
 
 3
 1. A colour display tube comprising an envelope having a substantially rectangular display window comprising an upright edge extending around the periphery of the display window, a substantially rectangular shadow mask comprising a large number of apertures and a skirt, a substantially rectangular supporting frame to which the skirt of the shadow mask is connected, and suspension means for suspending the supporting frame in the corners of the upright edge, characterized in that, at least near the ends of two oppositely located sides of the supporting frame, the skirt is welded to said supporting frame, and near the ends of the other two adjacent sides of the supporting frame the skirt engages said supporting frame in a weld-free frictional manner by means of a resilient element, this arrangement causing an asymmetrical load at the corners of the supporting frame, resulting in very effective damping of vibrations.
 
 
 4
 3. A colour display tube as claimed in Claim 1, characterized in that the pressure between the skirt and the supporting frame as a result of the frictional engagement has a value between 0.02 N and 1.20 N.
 
 
 5
 The Board, on a 2-1 vote, affirmed the examiner's rejection of the claims on the ground that they would have been obvious in view of the combination of either Kautz or Ignazio with Ragland. It is undisputed that the references generally show that the basic structure of a color display screen with upright edges, at the corners of which is suspended a support frame, and a shadow mask with apertures thereon and a skirt connected to the support frame, is well known. The first issue addressed on appeal centers on the Board's finding that the asymmetric loading limitation set forth in claim 1 is inherently met by Kautz and Ignazio. The second issue addressed centers on the Board's finding that the wedge-shaped shims used in Ragland to establish frictional contact between the mask and the frame can be combined with the teachings in Kautz and Ignazio to reject the claimed invention under 35 U.S.C. 103.
 
 
 6
 We review a PTO obviousness determination de novo, In re De Blauwe, 736 F.2d 699, 703, 222 USPQ 191, 195 (Fed.Cir.1984), while our review of factual findings is under the clearly erroneous standard. In re Caveney, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985).
 
 
 7
 Claim 1 requires that two adjacent sides be frictionally engaged in an arrangement that causes an asymmetrical load at the corner. The Board recognized that neither Kautz nor Ignazio specifically teaches asymmetric loading at the corner of the supporting frame and, therefore, relied on what it believed to be the inherent teachings of the references. After reviewing the references, we are convinced that the Board's finding that Kautz and Ignazio show asymmetric loading between the mask and the frame is clearly erroneous.
 
 
 8
 First, Kautz, as shown in Kautz Fig. 2, teaches that terminal welds such as 59 and 61 in Quadrant 1, should be located from 50 to 65 percent of the distance from the bisecting lines to the corner 45. The specification states that for both the top and side terminal welds, the higher percent portion of the location range applies to larger mask-frame sizes, and the lower percentages to smaller sizes. In addition, Fig. 2 shows both terminal welds located at 50 percent of the distance. Thus, Kautz suggests that the terminal welds should be located symmetrically, and therefore would not result in asymmetrical loading.
 
 
 9
 Furthermore, Kautz shows that the mask to frame welds are disposed in a manner removed from the assembly corners to provide weld-free "floating" corner sectors. A respective pair of welds, including a terminal weld and a guard weld, are placed on either side of each corner sector in a predetermined manner to inhibit pivotal movement of the sector mask about the terminal points of affixation. The purpose of this configuration is to enhance thermal equilibrium of the floating corner regions to avoid restricting the expansive movement of the mask and frame relative to each other. Thus, Kautz is directed towards solving a completely different problem than Applicants' invention and teaches away from the limitation requiring that two adjacent sides be frictionally engaged by means of a resilient element in an arrangement that causes an asymmetrical load at the corner of the support frame.
 
 
 10
 The law followed by this court is that "[a] prima facie case of obviousness is established when the teachings from the prior art itself would appear to have suggested the claimed subject matter to a person of ordinary skill in the art." In re Rhinehart, 531 F.2d 1048, 1051, 189 USPQ 143, 147 (CCPA 1976). See also In re Lalu, 747 F.2d 703, 705, 223 USPQ 1257, 1258 (Fed.Cir.1984) ("In determining whether a case of prima facie obviousness exists, it is necessary to ascertain whether the prior art teachings would appear to be sufficient to one of ordinary skill in the art to suggest making the claimed substitution or other modification.") In view of Kautz's teaching that the welds are symmetrically positioned and the specific requirement for floating corners, the Board's finding that Kautz would have suggested to one of ordinary skill in the art that the mask and frame should form a frictional engagement to produce an asymmetric load in the corners is clearly erroneous.
 
 
 11
 Second, Ignazio shows several weld points in Fig. 3 near the ends of opposite sides. However, Ignazio also shows four welds 10, 12, 13, and 14 at the corners which are taught to be essential welds. This fixation at the corners effectively precludes the possibility of an asymmetric load at the corners. Rather, it would suggest to one of ordinary skill in the art that the welds are to be positioned to produce symmetrical loading at the corners. Accordingly, the Board's finding that Ignazio teaches asymmetric loading at the corners of the supporting frame is also clearly erroneous.
 
 
 12
 In addition, the Board's finding that Ragland was properly combined with Kautz or Ignazio is also clearly erroneous. When making an obviousness determination, elements of separate prior patents cannot be combined when there is no suggestion of such combination anywhere in those patents. Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1568, 1 USPQ2d 1593, 1597 (Fed.Cir.1987), cert. denied, 481 U.S. 1052 (1987). Ragland teaches the placement of shims in the corner regions to increase the resonant frequency of the mask in order to eliminate or greatly reduce visible beating. This beating occurs when the mask vibrates at a certain frequency with respect to the scanning frequency of the electron beams. To add shims to the Kautz tube as taught by Ragland, would result in these shims being located within the floating corner regions. However, according to Kautz, these corner regions must float in order for the mask-frame assembly to reach thermal equilibrium during warm-up. Kautz specifically teaches that the mechanical stability problem has been addressed in the prior art by using corner welds, but that this defeated the advantage of the floating corner regions.
 
 
 13
 Similarly, Ignazio teaches forming raised areas or "bosses" on the frame in order to reduce the contact between the frame and the mask, with the mask welded to the frame at least in the corners, and with thermal expansion of the mask being "absorbed" in regions between the bosses. The spaces between the bosses are intended to provide accommodation for the different rates of thermal expansion of the mask and frame. To insert Ragland's shims into these spaces would interfere with this objective by plugging the areas provided to allow for thermal expansion.
 
 
 14
 This court has repeatedly cautioned against employing hindsight by using the applicant's disclosure as a blueprint to reconstruct the claimed invention out of isolated teachings in the prior art. See Grain Processing Corp. v. American Maize-Products Co., 840 F.2d 902, 907, 5 USPQ2d 1788, 1792 (Fed.Cir.1988). In the present case, the addition of Ragland's shims to the mask frame structures in either Kautz or Ignazio would interfere with their objectives to accommodate thermal expansion of the mask and frame during tube warmup. What is lacking, given a fair reading of these references as a whole, is any teaching which would lead one skilled in the art to combine the teachings of the references. On the contrary, absent the use of hindsight, one of ordinary skill in the art would, we believe, have been led away from such combination. Accordingly, the rejection of claims 1 and 3 is reversed.